Our third case this morning is number 17-1027 Reynolds Presto Products Inc. v. ITC. Mr. Shulman. May it please the Court. The Commission made clear legal error in assessing infringement of both of the patents in suit. Turning to the 443 patent, if the Commission were bound by its own claim construction, twice articulated in the record at Appendix 45 and 49, as the portion of the slider that spreads apart the track to open the bag, then Presto would concede its own claim construction argument and simply apply that unchallenged claim construction to the accused slider. In doing so, reduces the issue in this case on that patent to one question. Are the rectangular ribs outlined in yellow on page 16 of our brief in the picture of the accused product, are those ribs part of the spreader? If they are, and because Intoplast's expert admitted on page 1145 of the appendix that there is a channel through there, and because the Commission rejected Intoplast's argument that the spreader had to also push apart the track and have a channel all the way through the spreader, then that slider infringes the claims. The Commission found non-infringement because it found that those ribs were analogous to the ribs 26 and 28 of the patented product, but that wasn't the question. The testimony instead was that those ribs were analogous to the flanges 31 and 33 of the patented product, which were indisputably part of the spreader. That's the question the Commission needed to answer, that's the question on which there was abundant testimony, and that's the question that the Commission ultimately ignored. First, in three pages, pages 1148 to 49, and page 1151, Intoplast's expert admits that those flanges 31 and 33 closed the track when moving in one direction, and with the assistance of that middle finger 32, opened the track when moving in another direction. Second, on page 933 of the record in his direct testimony, he states that the proper construction of the spreader has three fingers. Finally, Presto's expert, on page 904 of the record, says that those ribs and the accused product do exactly what those flanges do, and in fact are necessary because they provide the proper peeling force to guide the track to that wedge and spread them. They are necessary in order to have a spreading function. The Commission's non-infringement analysis is comprised of three sentences. What evidence do you have that the ribs assist in opening as opposed to closing? The ribs on the accused product? That is on page 904 of the record, so that is Presto's expert, and he testifies in question 188, and he talks about in the end of the first element, which is the two outer flanges and the triangular protrusions, he is talking about the accused product, work together to pull the zipper apart at a steep angle, essentially peeling the two halves of the zipper apart. This necessarily decreases the peak forces required to open the zipper. He then says in the middle of the paragraph just below, he says with relatively thicker and stiffer materials, such as the engaged interlocking zipper elements, it is necessary to provide a mechanical constraint in the form of the side flanges to help concentrate the stresses. Then he says, further, nothing in the patent requires distinguishing the flanges of the spreader from the closing ribs in the accused device they are just combining. So he is now saying explicitly, those ribs, the rectangular outline in the picture on page 16 of our brief, are doing exactly what 31 and 33 do, and the evidence in the record was that 31 and 33 have that closing function for that spreading reason. Well, but the question is, isn't this what's meant by spread, right? Correct. And the dispute is whether the spreader is the finger that does this, that separates the two, or whether it also includes these ribs, correct? Your Honor, we don't have to worry about what spreader means because we are taking the claim construction that hasn't been challenged. And if we just apply the claim construction that hasn't been challenged as the portion of the slider that spreads apart the track to open the bag, and apply that to the accused product, that's the analysis that the commission never did. What the commission did instead was, is said... Can I just, there is a kind of threshold question, and maybe I'm misremembering. I thought that there was a serious question about whether you actually meaningfully presented this argument to the commission, that when you challenged Judge Essex's ruling, and maybe even before when you were arguing to Judge Essex, you never said that even if you just assume that 31 and 33 were, constitute the spreader, that the little ribs or whatever, I don't know what those numbers are anymore, that they actually are part of the spreader because they helped do the opening. So I'll stipulate to that I still win. And that, I think, doesn't the commission say you've waived that argument? The commission does say we've waived that argument. So where do you make that? So all throughout the case, and keep in mind that in an ITC case, you don't get a claim construction initially. So you've got to argue the facts against all of the claim constructions. In our petition for review on pages 1971 to 1975 of the record, and specifically in 1974 to 1975, we go through the whole analysis where we talk about what those accused ribs do in conjunction with that wedge. And we always take the position that those ribs are for guiding and aligning and providing that steep angle the same way, and without reference to any particular claim construction there. We're saying exactly what they do. And the claim construction that the commission adopted was the portion of the slider that spreads apart the track to open the bag. The construction that we advocated were the protrusions on the underside of the slider that contribute to spreading apart the track. And we're saying those are close enough, and for all intents and purposes here, we're going to say identical. And so the argument was the same concept. And this court has said that you don't... Well, when did you say it was part of the spreader? Isn't that the question? We are... So the testimony in the case was that the flanges 30... It's basically a three-step process, Your Honor. The flanges 31 and 33 are indisputably... I think I understand that. But the question is whether you made this argument preserved. And I hear you saying that you described the function of these flanges or whatever. I think the question is where did you testify that the existence of those flanges means that there's a spreader in the use of the product? So Your Honor, on page 1974 of the record, in 1975 of the record, we make specifically the argument, and this is on the petition for review, that the ribs, and this is at 1973, for example, which leads into 1974, we argue that the initial determination calls out the outer flanges in the accused product and says they can't be part of the record, they can't be part of the spreader because they function to force the zipper together. Where are you on the page? I'm sorry, 1973 of the appendix. Yeah, but where? Bottom left. At the very bottom. And then so we say... We're saying, okay, the Commission has said those ribs can't be part of the spreader because they close. And going into that paragraph, into the next page, we say what the ID misses, however, is that this is the exact functionality for the wedges 31, 33. This is the first two lines on page 1974 of the appendix. So it's 1973 to 1974. And at the bottom of 1973, we identify the initial determination says, no, those ribs can't be part of the spreader because they have a closing function. And in the next paragraph, we say that misses the point. The exact functionality of the wedges of the preferred embodiment also has an opening function. We don't reference... Can I just clarify something? So in the drawings in the 443, is there something besides 31 and 33 that acts like a rib? What about those two little semicircular for two branches that are just north and south of 38? Yeah, I'm looking at figure 38. Yeah. So, Your Honor, if you look at, for example, figure 3A. Yeah. So the ribs 31 and 33 are indisputably the spreader, part of the spreader. Right. And the evidence was that in certain embodiments, those have an opening function because they guide the track to that separator finger 32. That embodiment's in figure 5. And there's a big dispute about that. But what about some of this stuff that's more toward the right-hand side? So 26 and 28 is what the commission said, no, those ribs in the accused product are really 26 and 28. I see. Right. And what we're saying is that's not the question because what the commission needed to address was the testimony that they act as 31 and 33 in figures 5 and 6. And that is what all that testimony was about that I just cited. The commission's entire analysis on page 63 of the appendix is three sentences. They can't, and essentially they say it can't be, those ribs in the accused product can't be the spreader because they close. But they didn't cite that any of the evidence that they have an opening function are analogous to 31 and 33. Any of that evidence which I just cited to you. And the commission couldn't do that under the substantial evidence standard. It's exactly what they couldn't do. They ignored or overlooked essentially all of the evidence. It's not true, right? Mr. Shields testified that these are part of the closing function only and are not part of the spreader, right? He testified they have. Isn't that right? He testified they have a closing function. And he expressly said they're not part of the spreader, correct? He said they're not part of the spreader because they have a closing function, which is a non sequitur. It is fundamentally inconsistent with everything the patent stands for to say that the parts can't have both a closing function and an opening function. In fact, he identifies Blanches 31 and 33 as doing just that. So when the commission and the expert says it can't be part of the spreader because it has a closing function, that's not sufficient. The question is whether it has a closing function or not, does it also have an opening function? And here the evidence was let's just look at these ribs and say they have a closing function, end of case, and that's not. There was evidence to the contrary, which the commission did not address. So you're saying there's no evidence in this record that no one argued that these ribs are not part of the spreader and do not contribute to the opening function? There was evidence in the record that those ribs are part of the spreader and contribute to the opening function. No, I asked the opposite. Are you saying that the other side did not put on any evidence that the ribs do not contribute to the opening function? That's what they claimed, but there wasn't a logical link between why they said that and actual opening. What they said was they only have a closing function, therefore they're not part of the spreader. And that link missed the evidence that they also have an opening function. But wait. So there was testimony that they only have a closing function? What Mr. Shields said is that they have they do have a closing function. It's what you argued that you can have both an opening and a closing function. Yes, Your Honor. You just stated that, as I understood it, that there was testimony that they only have a closing function. Mr. Shields testified they only have a closing function. But that's not. That would be sufficient, wouldn't it? No, Your Honor. What this Court has said under the Substantial Evidence Act, going way back to 1951 in the Supreme Court in the Universal case, said substantial evidence is not just looking for the record and finding one thing that supports it. You have to address the evidence of the contrary under the Administrative Procedures Act. This is an administrative decision. And the Court ignored all of the testimony about the analogous ribs to the phalanges 31 and 33. I see I'm into my rebuttal time. If you have no other questions. Mr. Sherdean, is that how you pronounce it? Thank you, Your Honor. Close enough. I guess I'll just get right into addressing Presto's arguments. Well, first of all, the Commission correctly construed the spreader to be the portion of a slider that spreads apart the closure mechanisms, i.e. the zipper, to open the bag. One of our skills in the art of reading the plain language of the claims, along with specification, would easily understand that, one, the claims call for, in the plain language, a spreader for separating the closure profiles, includes a channel there through, and in reading the specification, would understand, at appendix page 174, on the columns 5 and 6, that the spreader comprises the phalanges 31, 33, and the channel there through. It does not include any other element. It does not include, as Presto argues, finger 32. Not the finger. It does not include finger 32. And that's because even though in the initial setup, as shown in several of the figures, the plastic goes between 31 and 33 and around 32, the finger, when it's, that's not, I think, as I understood your brief, you said that's not actually for opening. The actual opening doesn't occur until after the setup, and then it's always going around the 31 and 33, not between them. Correct. That's one of the reasons why finger 32 is not part. Firstly, I would say finger 32 is expressly described on appendix page 174, column 6, as simply a stop for the slider. It stops it from sliding off the bag as you slide to the left to close the bag. There's a corresponding finger 38. You get in that same part of the record. In the specification, column 6, appendix page 174, that stops it from sliding off to the right as you open the bag. So this morning we heard mostly, or maybe even only, an argument that wasn't contesting the claim construction as I understood it, but rather was arguing that taking that claim construction as a given, the accused product has things that serve that same function, which would be analogous to 26 and 28 in figure 3A of the patent, but aren't exactly the same as 31 and 33. Exactly, that's just incorrect. The protrusions in the accused product serve exactly as in the ribs 26, 28 in the patent, appendix page 174, column 5, to close the bag. Totally opposite function from what's in the plain language of the claims. So on page 904 of the appendix, they have their password, I gather, in answer to question 188, saying the contrary, no? What they ignored was right before that, have it outlined here. Right in the middle of that paragraph, he says expressly, these side flanges hold the interlocking zipper members together until just before the triangular portion of the spreader forces them apart. So he's admitting right there that they serve a closing function, exactly as in the patent, ribs 26, 28, that they serve a closing function. But Mr. Schulman says, sure, I'll stipulate they serve a closing function. Why in the world would you think that doesn't, that means that they don't serve an opening function? Right, again, one aborting skill in the art of reading the specification would understand that every element of the slider is distinctly described and shown in the figures. There's the ribs 26, 28, there's the fingers, there's the spreader. Every one of these elements have a different function. They cannot just say that everything contributes. This is just a non-starter, just muddies the waters, which is not in accordance with proper plain construction principles, as ALJ correctly found in appendix page 48. Where in the appendix is, I gather, Mr. Shields' testimony that says 26 and 28 in the patented figures, and or the ribs in the accused products serve only a closing function and not an opening function. Right, appendix page 990, question 202. Question what? Question 202. No, I'm sorry, page what? Appendix page 990. 990? That's Shields' rebuttal statement. Which question now? Question 202. Okay. Where, you know, he's responding to the contention from their expert that the side protrusion's ribs form a channel. He says, no, I do not. As I just explained, the ribs are not part of the spreader in claim one, so any space between those ribs does not form a channel through the spreader as required by claim one. In fact, the 443 patent defines a space between the ribs, 26, 28, as the cavity, not the channel. The cavity between the ribs is sized to allow the closure profiles, 130, 131, enough room to pass through the cavity, yet still force the closure profiles, 130, 131, to engage. Thus, the cavity is separate from the claim channel. It's not part of the spreader's separating function. Instead, the ribs that define the cavity force the closure profiles together instead of forcing them apart, which is a function of the spreader. Again, the plain language of the claims calls for a spreader that separates the closure profiles. This is not the case with the protrusions in the accused product, which equate to the ribs 26, 28. Also, they cannot get around a channel there through. There is no channel there through in the accused product, as the ALJ correctly found in Appendix Pages 62 and 63. He found, based on the record, that the accused product solely has a spreader that comprises a closed, one-piece structure. No channel there through. The expert also cited other differences between the accused product as well, with PRESTO's expert's testimony that it cannot be equivalent to the claim construction accused product. Are there any other questions on the 443 patent? Just briefly state with respect to 880 patent. Again, the record is clear. The plain language of the claims, the specification, I want to understand with respect to deflection surface limitation. Deflection surface positioned about 45 degrees from the top wall that the patentee contemplated 36 degrees. However, they specifically claimed 40 to 50 degrees. Accordingly, no satisfaction of the technical prong since the domestic industry product is 29 degrees. Can I ask you about that? What is the doctrinal rubric for saying something that feels like it makes a lot of common sense? So this is a question about what's the doctrine that says, the specification says 30 to 60. They very clearly chose 40 to 50 in the claims. So something down around 30 just cannot be either literally about 40 or equivalence. What's... Well, there's established case law that says if you disclose something you don't claim it, you dedicate it to the public. So that's what you're looking for. But also on top of that, of course, we have the prosecution history. A stop on appendix pages 554 and 555 where the patentee made clear unmistakable statements that that's the definition of that limitation. It's 40 to 50 degrees from the top wall. They clearly state that. It's about 40 to 50 degrees. About 40 to 50. And clearly 29 degrees is not about 40 to 50 degrees. Well, that's the question. Clearly we're... I mean, I gather that, I mean, Judge Essex's main point, maybe the core point was it can't possibly be about 40 or even if it's equivalent when the patent specification uses the broader range. They knew exactly how to cabin it and they cabined it and you can't... But it's the doctrinal point that I'm... The doctrinal label for what seems a common sense point that I'm asking about. I believe it's against established place law if you disclose something, one more skill in the art, but understand that the patentee deliberately did not claim this range. They contemplated 30 to 60, 29 degrees even arguably outside of about 30 to 60, but they did not claim that. They deliberately carved out 40 to 50 degrees. And on top of that, again, you have the prosecution history, the stopple in the plain language of the claims. 40 to 50 does not encompass 29 degrees. And with the accused product, it is with respect to the sidewall protrusion instead of a topwall protrusion, so it's not oriented with respect to the topwall, so it's 90 degrees from the topwall, again, outside of that range. And similarly for engagement surface limitation, again, there's clear and mistakeful statements made where they clearly analogize the discontinuities in the Porsche reference to discontinuities that are not part of the claim of invention, namely the discontinuous shoulders. So the accused product and the investigatory product have one or more of these discontinuities, discontinuous shoulders, which prevent the engagement surface from extending continuously along the hook link. Do I understand correctly that it would be sufficient to affirm the denial of 337 violation as to the 002 to conclude that the technical prong, as it's called, is not satisfied by the 29 degrees? Yes, there's a number of reasons that would be one reason for affirming no violation as to the 002 patent. There's no further questions. Okay, thank you. Thank you, Ron. Mr. Hogg, is that how you pronounce it? I pronounce it Hogue, but a lot of people say Hogg, and I'm not going to correct them. The only thing I want to add to that is that there was some allusion to finger 32 in the drawings as being participating in the spreading function, and if you look at the specification, there's only one job and one job only for finger 32, and that's to close the bag and prevent the bag from stopping the slider from going off the bag. There has been some allusion to a testimony from our expert, an enoplast expert, that is supporting their position, but there was an interesting set of cross-examination questions of the figures like four through eight. You know, if you look at these figures in the abstract, doesn't it really look like finger 32 is spreading things apart and things like that? Well, that was kind of an absurd bunch of testimony that had nothing to do with the actual text of the patent. If you follow the text of the patent, it's either opening or closing, and this finger 32 is shown in figure three and four when the bag is being closed. It's not spreading. The bag is being closed by the ribs. The ribs in the patent, they only have one job, and that is to close the bag, and the ribs in the accused products, they close the bag. That's all they do. They don't spread anything. One thing you're kind of missing when you look at the drawing is that there's a relief to these things like the spreader may be lower and then the ribs may be higher or something like that. That all depends on how you look at it, but the drawings aren't always that clear. So I did want to also say that there was the discontinuous, continuous argument, evidence that the patent O02 is limited to the engagement hooks have to be one-sided, one hook on each side, and the accused products had two on each side, and that was a matter of estoppel. And that's the only thing I wanted to add, Your Honor. Okay. Thank you, Mr. Miller. Mr. Shillman, you've got a little under two minutes. Thank you, Your Honor. I'm going to hope to get to three points, which is all I want to make. I heard Mr. Jardim claim, talk about the function of the spreader as pushing apart the track and there not being a channel. What they want to do is limit the construction of the spreader to a piece that pushes the tracks apart and has a channel all the way through the spreader. They advocated for that, and on page 45 of the appendix, that construction was not adopted as part of the construction of spreader. So all we're left with is the portion of the slider that spreads apart the track to open the back, those other things, that it has to spread it apart and have a channel through the whole length. The commission didn't adopt that argument. I want to switch to turn to page 985 of the appendix, because we just heard Mr. Hogue talk about this confusion about the separator finger and what it does. And I want the court to be aware of what Mr. Shill's direct testimony was. It's the first full paragraph at the top of 985. This is from his direct witness statement. Dr. Reinholtz also overly complicates the term spreader when he says it has three protrusions, including a middle protrusion, and two other protrusions off to the side. While that may be true in some embodiments, Exhibit Example 4B, that is not necessarily true in all embodiments. So, Judge Toronto, to your question, yes, it does look obvious like that's what's happening in Figures 5 and 6. And, in fact, Mr. Shill, before he flip-flops multiple times on cross-examination, said consistently in his direct testimony, both there and on page 933, that, yes, that is what is shown in the patent, that that middle finger has a separating function. I want to briefly talk about the prosecution history estoppel argument. For both the hook-length and the top-wall limitation, the applicants never made a ---- Roberts. This is about the 002. Horwich. The 002, I'm sorry, yes. The applicants never made a clear and unambiguous disavowal of what the claim is not. Unmistakable disavowal doesn't hinge on a clear statement of what the claim is. 112 already requires that. This Court said it requires a clear and unmistakable disavowal. In other words, what the claim is not. And you can look all through the prosecution history. The applicants never said the claim does not have multiple hooks or the invention does not have multiple hooks and the invention cannot be oriented to the rear wall. What about the 29 is not close enough to 40, either to be about 40 or the equivalent of about 40? So, Your Honor, Mr. Jardine's argument was, well, there's this dedication to the public argument. The dedication to the public issue only arises once we've assumed there's no literal infringement. That's a doctrine of equivalence issue. That's an equitable doctrine of equivalence issue. We're arguing that, literally, if you apply the cohesive case in which this Court has said that 25 microns was literally about greater than 30 microns, and, in fact, could go all the way down to 23.044. I thought there was – I thought that the prosecution history showed that they distinguished the prior art by the angle, and they adopted a different range for the angle than existed in the prior art, and that that was why they said that the prior art didn't anticipate. Right? So, Your Honor, that's not quite what happened. In fact, the limitation about 40 to 50 degrees was always in the art – was always in the claim, rather. So that was never amended. So, if we're looking at any – But it doesn't make any difference whether that was in the original or not, as long as there's argument that that's how the prior art should be distinguished. Well, Your Honor, that's where – And it's estoppeled by argument as well as by a claim. You're right, Your Honor, and that's where there has to be a clear and unambiguous disavowal of scope. In other words, the applicant would have had to say, at some point, these claims do not cover anything below about 40. And what they said was – You can't say this is different from the prior art because it has a different angle? Well, Your Honor, all prosecution history characterizes the claim and characterizes the prior art, and that's why – that's why this Court has said in Phillips the prosecution history is less relevant and there must be a clear and unambiguous disavowal. What you have to do is characterize what your invention is not. Can I ask this? So, I mean, I think you just cabined this point about 29 and 40 as not being an equivalence argument, but 29 is, in fact, literally about 40 in context. Does that make this a factual finding? Yes, Your Honor. So why couldn't the commission reasonably find that 29 is just not about 40? Because – Relying in part on the evidence of the specification that exhibits a very clear choice about numbers. Because the analysis when you have about instructs, number one, you look to what the purpose of that numerical limitation is. That's the cohesive case. All of the evidence in the case was that 29 degrees meets that purpose, both from the intrinsic evidence, which says something down to about 30 would meet that limitation, and the extrinsic evidence, all of the testimony about what does that deflection surface actually do, and that 29 degrees actually works. Nobody disputes that. So the only evidence in the case, and this is the only evidence Interplass put on, is it can't be 29 degrees because 29 is about two-thirds of 40. That mathematical fact ignores the infringement test, what you have to do under cohesive. So it's not that the commission just said, well, we reasonably look at the evidence and we say, oh, this 29 degrees is not literally. There's actually no evidence on that. The only evidence was this irrelevant mathematical fact, which it didn't matter here because cohesive says you don't start with the numbers. You don't just look at the numbers and say, oh, this doesn't make sense because the numbers are too big. You dig down deeper. And, in fact, in cohesive, the court said, in that particular case, we don't know whether between 23.044 and between 25, this is at 1368 to 1370 of cohesive, we don't know between 23.044 and 25.4 whether or not that's literally greater than about 30 microns. We actually have to look at the purpose and the function. That was what this court said about construing about. So in this case, when you look at the purpose and the function, the only evidence was that, yes, 29 degrees is literally about 40 because the specification says the purpose works all the way down to about 30, and there's no dedication to the public issue unless the court construes the literal scope of the claim more narrowly than I think it deserves under cohesive. I see I'm out of time. I think we're out of time. Thank you, Mr. Shulman. Thank you. Thank all counsel. The case is submitted. That concludes our session for this morning.